**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **KATHY GONZALES,** § | |
| § | |
| *Plaintiff,* § | |
| § | Case No. 5:21-cv-118 |
| V. § | |
| § | |
| **SANDALWOOD MANAGEMENT, INC.,** § | |
| § | |
| *Defendant.* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kathy Gonzales ("Gonzales" or "Plaintiff") files this Original Complaint against Defendant Sandalwood Management, Inc. ("Sandalwood" or "Defendant"), and would show as follows:

### A. Parties

1.  Plaintiff Kathy Gonzales brings this action individually. Plaintiff resides in Bexar County, Texas.

2.  Defendant Sandalwood Management, Inc. is a Texas corporation and may be served through its registered agent for service of process, Joel Ospovat, 500 Capital of Texas Highway, Bldg. 7, Austin, Texas 78746.

### B. Jurisdiction and Venue

3.  This case is brought under the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12112, *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the Texas Commission on Human Rights Act, Section 21.051, *et seq.*, of the Texas Labor Code ("TCHRA").

4.  This Court has jurisdiction over this matter according to 28 U.S.C. § 1331; 29 U.S.C. § 2601; and 42 U.S.C. § 12112.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims of a violation of TCHRA by virtue of 28 U.S.C. § 1367.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

### C. Exhaustion of Administrative Remedies

7. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and failure to accommodate.

8. Plaintiff files this Original Complaint within 90 days after receiving the notice of the right to sue from the EEOC.

### D. Facts

9. Gonzales is the former Community Manager at Sandalwood's Monticello Manor apartment complex.

10. Gonzales was diagnosed with acute cholecystitis in early January 2019. Gonzales has a history of pancreatitis and diverticulosis, and in early January 2019 she experienced two flare ups of cholecystitis as a complication of those medical conditions. Because of these disabilities, Gonzales suffered extreme abdominal pain and swelling in her extremities that impeded her ability to walk. As a result, she was unable to get up, walk, and lift.

11. Gonzales was hospitalized in January 2019. During her hospital stay, she notified Sandalwood and its third party leave administrator, ADP, that she needed to take FMLA leave for a serious medical condition. That FMLA leave was subsequently approved.

12. On January 30, 2019, Gonzales wrote to her supervisor:

> During my time out I have received several calls and text messages from Sandalwood employees that are inquiring of my current employment status or to inform me of what's being said through the grapevine. My time away on sick leave for recovery has been nothing but stressful with wonders of what I have ahead of me upon my return. Along with Sandalwood employees calling me I have also been informed by residents and contractors that Cynthia has informed them that she was returning to fulltime to Monticello Manor effective the 4th of February to replace me. . . I have FMLA documents that are being filed due to illness that hospitalize me from the 6th-9th of January and currently under doctors care. At this point I come to you for closure and ask that if the intentions are to terminate me that you provide me with the proper documentation at this time so I can prepare myself for the unforeseen. I have been a loyal employee and deserve nothing less th[a]n what I am requesting.

Kim Jackson's response was less than reassuring: "***Sandalwood was not planning on terminating your employment prior to becoming ill***. . . . The occupancy at Monticello is at 88% and the delinquency is at an all time high of $22K so unfortunately we cannot sit back to let this drop further without taking the actions needed." (emphasis added).

13. Gonzales spent the remainder of her leave concerned that, while Sandalwood had not previously been planning to terminate her, plans may have changed when Gonzales took a leave of absence. She was further concerned that she would be held responsible for the property's financial problems during her medical leave. Gonzales's concern that her position had been filled within weeks of her FMLA leave was a legitimate concern that Sandalwood did little to reassure her about.

14. Sandalwood also required Gonzales to continue to work throughout her leave of absence. As part of Gonzales's job duties as Community Manager for the apartment complex, Gonzales was required to be on call at all time to handle emergencies that arose after hours. Sandalwood failed to remove Gonzales from the emergency call

list, and so Gonzales was required to respond to numerous emergencies that arose at the complex between January 12, 2019 to March 16, 2019.

15.     During Gonzales's approved medial leave, Sandalwood also interfered with Gonzales's attempts to continue her health insurance. When Gonzales attempted to complete the enrollment process to continue her insurance, she was blocked from doing so because due to an automatic notice that there was a "termination or leave in process." Gonzales promptly informed Sandalwood of this problem in obtaining benefits, but Sandalwood did not assist her. Indeed, on February 2, 2019, ADP informed Gonzales that her insurance had been cancelled effective January 31, 2019.

16.     On February 13, 2019, Sandalwood through ADP approved Gonzales's FMLA leave and notified her that her FMLA leave "will tentatively exhaust on April 01, 2019. If you require additional time beyond April 01, 2019, you will be required to submit updated medical documentation to ADP TotalSource for further review." This leave exhaustion estimate did not recognize that Gonzales was frequently forced to perform work and respond to emergencies during her leave.

17.     Because Sandalwood interfered with Gonzales's medical insurance, she was unable to receive the surgery she desperately needed and was also unable to receive other medical care necessary to treat her disability and chronic pain. Moreover, she had difficulty making a physician's visit to get released to work, since she could not afford to pay for a visit out of pocket. Gonzales informed Sandalwood of her difficulties in securing a doctor's visit to release her to work.

18.     On April 2, 2019, Sandalwood HR Director Hera Zintak notified Gonzales that Sandalwood was moving Gonzales to non-FMLA leave through April 10, 2019. Zintak informed Gonzales that the deadline of April 11 to return to work "is firm and

[Sandalwood] will not be able to further extend your leave as it stands." Zintak's "firm deadline" of approximately one week after Gonzales's FMLA allegedly expired and her unwillingness to engage in the interactive process denied Gonzales the reasonable accommodation she is entitled to by law.

19. Sandalwood terminated Gonzales on April 11, 2019. They then evicted her from her employer-provided apartment on April 12, 2019, going so far as to take her to court to force her to move during a medical emergency.

20. Gonzales was finally approved for alternate health insurance on April 18, 2019 and she was able to receive gallbladder surgery on May 24, 2019. Since her recovery from surgery, she has been released to work without restrictions and is fully qualified to perform her previous work for Sandalwood.

### E. Count 1—Disability Discrimination under the ADA and TCHRA

21. Plaintiff incorporates by reference all of the allegations made above.

22. Plaintiff is disabled, as defined by the ADA and TCHRA. Specifically, Plaintiff has a medical condition that substantially limits one or more major life activities. Plaintiff is qualified to perform the essential functions of the position of Community Manager with or without accommodations.

23. Plaintiff is an employee within the meaning of the ADA and TCHRA.

24. Defendant violated the ADA and TCHRA by intentionally discriminating against Plaintiff because of her disability or perceived disability. Defendant's discriminatory acts include giving Plaintiff a firm deadline to return to work instead of engaging in the required interactive process, and terminating Plaintiff.

25. Additionally, Defendant discriminated against Plaintiff by failing to provide Plaintiff with a reasonable accommodation of time off. Although Plaintiff requested this accommodation, Defendant refused to make it.

### F. Count 2 – FMLA Interference

26. Plaintiff incorporates by reference all of the allegations made above.

27. Plaintiff is an eligible employee within the meaning of the FMLA. Plaintiff was employed by Defendant for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. *See* 29 U.S.C. §2611(2).

28. Plaintiff was entitled to 12 workweeks of leave per leave year because he suffered from a serious health condition.

29. Plaintiff gave her employer practicable notice when the leave was needed.

30. Plaintiff provided all necessary information related to her serious health condition.

31. It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA. 29 U.S.C. §2615(a)(1). FMLA rights include requesting or taking leave under the FMLA and once leave is completed, being restored by the employer to the position of employment the employee held when leave commenced, or to an equivalent position of employment with equivalent employment benefits, pay, or other terms and conditions of employment. 29 U.S.C. §2612(a)(1); 29 U.S.C. §2614(a)(1); 29 U.S.C. §2614(c)(1).

32. Defendant intentionally interfered with and/or denied Plaintiff's exercise of rights provided under the FMLA by: (a) requiring her to work while on FMLA and not extending her available leave to account for this work; (b) interfering with her ability to continue her health insurance during her FMLA leave; (c) failing to restore her to the

position of employment she held when leave commenced, or to an equivalent position of employment with equivalent benefits, pay or other term and conditions of employment; and (d) by using her FMLA-protected absences as a basis for Defendant's decision to terminate her.

### G. Count 3 – FMLA Retaliation

33. Plaintiff incorporates by reference all of the allegations made above.

34. Plaintiff is an eligible employee within the meaning of the FMLA. Plaintiff was employed by Defendant for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. See 29 U.S.C. §2611(2).

35. Plaintiff was entitled to 12 workweeks of leave per leave year because she suffered from a serious health condition.

36. Plaintiff gave her employer practicable notice when the leave was needed.

37. Plaintiff provided all necessary information related to her serious health condition.

38. It is unlawful for an employer to discriminate or retaliate against an employee for engaging in FMLA-protected activity. 29 U.S.C. §2615(a)(1 and 2).

39. Plaintiff engaged in FMLA-protected activity by requesting leave; taking leave; and asserting her rights under the FMLA, including informing her employer that she would need an FMLA-qualifying leave of absence. Defendant discriminated and/or retaliated against Plaintiff for engaging in FMLA-protected activity. Specifically, Defendant terminated Plaintiff in retaliation for her engaging in FMLA-protected conduct and for Plaintiff engaging in FMLA-protected leave.

## H. Prayer for Relief

40. Plaintiff respectfully requests and demands judgment against Defendant for the following:

(a) Actual, consequential, and compensatory damages;

(b) Exemplary and punitive damages;

(c) Equitable relief, including, but not limited to front pay;

(d) Liquidated damages;

(e) Pre-judgment interest if, as, and when allowed by law;

(f) Reasonable and necessary attorney's fees;

(g) Costs of court;

(h) Post-judgment interest; and

(i) Any other relief to which Plaintiff may be entitled, whether in law or equity.

## I. Jury Demand

41. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues.

Respectfully submitted,

**THE MORALES FIRM, P.C.**
6243 W. Interstate 10, Suite 132
San Antonio, Texas 78201
Telephone: (210) 225-0811
Facsimile: (210) 225-0821

BY: /S/Melissa Morales Fletcher
Melissa Morales Fletcher, *Of Counsel*
State Bar No. 24007702
Email: Melissa@themoralesfirm.com
Allison Sarah Hartry
State Bar No. 24083149
Email: ahartry@themoralesfirm.com